UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KAREN M. GOULD f/k/a KAREN M. JOYCE, ALBERT IRA GOULD and NORTH VILLAGE TOWN HOMES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF NEW YORK MELLON as TRUSTEE FOR CWALT, BANK OF AMERICA, and RESIDENTIAL CREDIT SOLUTIONS, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 14-40096-TSH |

**MEMORANDUM AND ORDER ON DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS' AND BANK OF NEW YORK MELLON'S MOTION TO DISMISS (Docket No. 46) AND DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS (Docket No. 48)**

**August 18, 2015**

**HILLMAN, D.J.**

Plaintiffs Karen Gould, Albert Gould, and North Village Towne Homes, LLC ("Plaintiffs") assert claims against Defendants Bank of New York Mellon, Bank of America, and Residential Credit Solutions, Inc. ("Defendants"), arising out of the attempted foreclosure of the Goulds' home. Originally filed in Massachusetts Superior Court, Defendants removed the action pursuant to this Court's diversity jurisdiction. Defendants have filed motions to dismiss the amended complaint for failure to state a claim. (Docket Nos. 46 & 48). For the following reasons, Defendants' motions to dismiss are ***granted***.

## Background

The following facts, taken as true for purposes of this motion to dismiss, are alleged in the complaint and its incorporated documents. Plaintiff Karen Gould ("Karen Gould") is the sole obligor on a promissory note secured by a mortgage on a home at 20 Fire Road 10, Lancaster, Massachusetts (the "Property"). *See* Pl.'s Am. Compl., Docket No. 42, ¶ 1. Plaintiff Albert Gould ("Albert Gould") is Karen Gould's husband, and they reside together at the home in Lancaster. *Id.* at 1-2. Plaintiff North Village Town Homes LLC ("North Village") is a Massachusetts limited liability company with a principal place of business in Lancaster, Massachusetts. *Id.* at 3. Albert Gould is its duly authorized Manager. *Id.* North Village is the assignee, successor in interest and current holder of all rights of Spectacle Pond Investors, Inc. ("SPI"). *Id.* at 3; Pl.'s Am. Compl., Docket No. 42, Ex. 1 at 5.

Defendant Bank of New York Mellon ("BNY Mellon") is a bank organized under the laws of New York with a principal place of business in New York, New York. *See* Notice of Removal, Docket No. 1, ¶ 4.[1] BNY Mellon claims to hold both the promissory note and the mortgage encumbering the Goulds' property. *See* Pl.'s Am. Compl., ¶¶ 4, 10. Defendant Bank of America ("Bank of America") is a nationally chartered bank with a principal place of business in Charlotte, North Carolina. *See* Notice of Removal, ¶ 6. Bank of America serviced the loan on behalf of BNY Mellon until December 2012, at which point Defendant Residential Credit Solutions ("Residential") took over as the servicing agent. *See* Pl.'s Am. Compl., ¶¶ 5, 6. Residential is a Delaware corporation with a principal place of business in Fort Worth, Texas.

---

[1] Although Plaintiff's complaint alleges that each of the Defendants has a principal place of business in Massachusetts, the notice of removal asserts that each Defendant is incorporated, and maintains a principal place of business, outside of Massachusetts. Plaintiff does not contest Defendant's jurisdictional allegations or the existence of the Court's diversity jurisdiction under 28 U.S.C. § 1332. Consequently, the Court adopts the jurisdictional facts alleged in the Notice of Removal. *See generally D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124 (1st Cir. 2011); *Fortucci v. RBS Citizens, N.A.*, 784 F. Supp. 2d 85 (D. Mass. 2011).

*See* Notice of Removal, ¶ 5.

Karen Gould has been delinquent in her mortgage payments for several years and the Property is worth significantly less than the outstanding balance due on the promissory note. *See* Pl.'s Am. Compl., ¶ 11. With the threat of foreclosure looming in 2012, the Goulds decided to execute a short sale of the Property through Bank of America, the servicing agent at the time.[2] *Id.* at ¶¶ 14-15. The Goulds understood that if they found a buyer willing to purchase the Property at a sales price approved by Bank of America, the mortgage would be discharged. *Id.* at ¶¶ 15, 18. During the negotiation of the short sale, Plaintiffs communicated with Bank of America exclusively through Bank of America's electronic email platform known as "EQUATOR." *Id.* at ¶¶ 8, 38-39.

To skirt Bank of America's requirement that a short sale buyer be "unrelated" to the seller, Albert Gould formed SPI, Inc. to purchase the Property. *Id.* at ¶¶ 43-45. In June 2012, Karen Gould and SPI executed a purchase and sale agreement and submitted it to Bank of America for approval. *See* Pl.'s Am. Compl., Ex. 1 at 5-8, Ex. 8.[3] The agreement provided that SPI would purchase the Property for $410,000. *Id.* Albert Gould signed the agreement on behalf of SPI in his capacity as President, and Karen Gould signed the agreement under her former name "Karen M. Joyce." *Id.* The "Short Sale Purchase Contract Addendum" signed by the Goulds includes the following provision:

> The Parties acknowledge and agree that the Subject Property must be sold through an "Arm's-Length" Transaction. "Arm's length" means two unrelated parties characterized by a selling price and other terms and conditions that would prevail in a typical real estate sales transaction. No party to this contract is a family member, related by blood or

---

[2] "In a short sale, the lender agrees to allow the borrower to sell the home for less than what he owes on the mortgage." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 69 n.3 (1st Cir. 2014).

[3] The contract between SPI and Karen Gould included a standard purchase and sale form, *see* Pl.'s Am. Compl., Ex. 1 at 5-8, as well as a short sale purchase contract addendum that Bank of America required parties to complete when executing a short sale agreement. *See* Pl.'s Am. Compl., Ex. 8.

3

marriage, business associate or shares a business interest with the mortgagor (Sellers). *See id.* at Ex. 8. In August 2012, Bank of America returned a "counter-offer," requesting that the parties to the short sale agreement increase the sales price from $410,000 to $422,500. *See id.* at Ex. 5. Karen Gould and SPI accepted the counter-offer by executing a Price Change Addendum on August 23, 2012 (with Albert Gould again signing as President of SPI and Karen Gould signing as "Karen M. Joyce"), raising the sales price as requested by Bank of America. *See id.* at ¶ 16; Ex. 1 at 9. On October 3, 2012 Bank of America notified Plaintiffs by letter that it would not approve the short sale to SPI because it had discovered that Albert Gould and "Karen M. Joyce" were married. *Id.* at ¶ 17; Ex. 6.

Following the rejection letter, SPI and Albert Gould each sent letters under M.G.L. c. 93A to Bank of America, demanding that Bank of America perform the short sale pursuant to the purchase and sale agreement and discharge the mortgage. *Id.* at ¶ 18. Bank of America responded on December 15, 2012, stating that it was no longer servicing the loan and that all inquiries concerning the matter should be sent to Residential, the new loan agent. *Id.* at ¶ 20. Residential, in turn, informed Plaintiffs that it was only able to answer questions pertaining to the loan since the date it began servicing. *Id.* at ¶ 22. All other attempts by Plaintiffs to communicate with Bank of America, Residential, and BNY Mellon—including additional 93A demand letters sent to all defendants—have been unsuccessful. *Id.* at ¶¶ 21-25. In June 2014, BNY Mellon initiated foreclosure proceedings against the Goulds, and a foreclosure sale was scheduled for July 3, 2014. *Id.* at ¶ 26. On June 30, 2014 Plaintiffs filed this action in Massachusetts Superior Court and obtained a preliminary injunction prohibiting the foreclosure sale.

Defendants removed the case to this Court and filed motions to dismiss for failure to state a claim in July 2014. (Dockets No. 12 & 14). The Court denied the motions without prejudice,

and granted Plaintiffs leave to file an amended complaint. (Docket No. 41). Plaintiffs filed their amended complaint on December 15, 2014. (Docket No. 42). The amended complaint asserts claims against the Defendants for breach of contract (Count I), promissory estoppel (Count II), violations of M.G.L. 93A (Counts III and IV), breach of the implied covenant of good faith and fair dealing (Count V), and a claim "call[ing] upon the Defendants to establish that they are the current and legally valid present holders of the note and mortgage" (Count VI). Defendants have renewed their motions to dismiss for failure to state a claim. (Dockets No. 46 and 48).

## Discussion

Two motions to dismiss are pending. One was filed by BNY Mellon and Residential (Docket No. 46), and the other was filed by Bank of America (Docket No. 48). Because each motion incorporates the arguments of the other, the Court considers the motions jointly.[4]

### *Standard of Review*

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must include sufficient factual detail to make the plaintiff's claim to relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A claim is facially plausible when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 68 (1st Cir. 2000). The court may consider only facts and documents that are incorporated into the complaint; otherwise the Court must convert the motion into one for summary judgment under Fed. R. Civ. P. 12(d).

---

[4] Both Motions to Dismiss argue that Plaintiffs Albert Gould and North Village Town Homes lack standing on certain or all of the claims in the amended complaint. Because, for the reasons set forth below, the Court finds that the amended complaint fails to state a claim with respect to any plaintiff, the Court does not address the standing arguments made by Defendants.

*See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Narrow exceptions to this rule exist for "documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)) (internal alterations omitted).

Dismissal is appropriate if the plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and alterations omitted). Although detailed factual allegations are not necessary, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

*Counts I and V: Contract Claims*

Count I asserts that Defendants breached an enforceable contract by failing to approve the proposed short sale and discharge Karen Gould's mortgage. Count V asserts that Defendants breached the covenant of good faith and fair dealing implied in that contract. Defendants argue that the facts alleged by Plaintiffs do not support the existence of an enforceable agreement.

The amended complaint incorporates several documents that allegedly establish the Defendants' enforceable promise to approve the short sale and discharge the mortgage. The Court may consider these materials without converting the motion into one for summary judgment. *See Trans-Spec Truck Serv.*, 524 F.3d at 321. The documents attached to and incorporated into the complaint include the purchase and sale agreement signed by Karen Gould

and SPI (Pl.'s Am. Compl., Ex. 1 at 5-8); the "Short Sale Purchase Contract Addendum" (Pl.'s Am. Compl., Ex. 8); the "Price Change Addendum" (Pl.'s Am. Compl., Ex. 1 at 9); communications from the EQUATOR system between Bank of America and Plaintiff's counsel (Pl.'s Am. Compl., Ex. 5); and letters dated October 3 and 4, 2012 from Bank of America to SPI (Pl.'s Am. Compl., Exs. 6 & 7). The Court will also consider communications from the EQUATOR system submitted by Defendants. (Def. Bank of America's Mem., Docket No. 49, Ex. A). Plaintiffs do not contest their authenticity and the exchanges between Bank of America and Plaintiffs regarding the short sale are repeatedly referred to in the amended complaint. Furthermore, as described in more detail below, the communications are central to plaintiff's contract and estoppel claims. Consequently, the EQUATOR documents submitted by Defendants will be considered for purposes of this 12(b)(6) motion to dismiss. *See Foley*, 772 F.3d at 74.

Under Massachusetts law, "[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699 (2000). It is not required that all terms of the contract be precisely specified, but the parties must have progressed beyond the stage of imperfect negotiation. *Id.* The requisite intent is the intent to be bound by the contract's terms "at the moment of the formation of a contested agreement." *Targus Group Intern., Inc. v. Sherman*, 76 Mass. App. Ct. 421, 432, 922 N.E.2d 841 (2010). Intent must be determined "from a fair construction of the contract as a whole and not by special emphasis upon any one part." *Willitts v. Roman Catholic Archbishop of Boston*, 411 Mass. 202, 208, 581 N.E.2d 475 (1991). "Expectations and negotiations fall far short of a binding agreement." *Brighton Packing Co. v. Butchers' Slaughtering & Melting Ass'n*, 211 Mass. 398, 405, 97 N.E. 780 (1912).

In this case, the documents relevant to the formation of the alleged contract fail to establish that the Defendants intended to be bound by any agreement with Plaintiffs. Plaintiffs argue that a contract was formed on August 23, 2012 when Karen Gould and SPI executed the Price Change Addendum, raising—at Bank of America's request—the short sale purchase price of the home from $410,000 to $422,500. According to Plaintiffs, this constituted the Goulds' acceptance of Bank of America's short sale "counter-offer"—that is, an offer to approve the short sale if Karen Gould and SPI increased the sales price. Examination of the EQUATOR communications, however, reveals that the Defendants never intended for Plaintiff's acceptance to be the final step in approving the short sale. To the contrary, such a result was expressly and repeatedly disclaimed, in four separate messages sent from Bank of America to Plaintiffs' counsel between August 16 and August 20, 2012. The last message from Bank of America prior to Plaintiffs' acceptance of the counter-offer is representative of the conspicuous language used:

> If you accept this counter offer . . . [w]e will then present this offer to the investor(s) for approval. PLEASE NOTE: Your acceptance of the counter offer terms does not mean the transaction has final approval. The investor(s) or mortgage insurer (if any) may respond with additional price adjustments or other stipulations. Please inform the buyer that there may be multiple counter offers.

*See* Def. Bank of America's Mem., Docket No. 49, Ex. A (emphasis in original). The Defendants' lack of present intent to be bound by Plaintiffs' acceptance of the counter-offer is clear from this language. Plaintiffs' argument that Bank of America had the requisite intent merely by *proposing* an increased sales price flies in the face of Bank of America's express disclaimer. Plaintiffs point to no other documents or communications that suggest Defendants moved beyond the stage of imperfect negotiation and formed the requisite intent to be bound. Consequently, the Court concludes that Plaintiffs have not alleged facts supporting the existence of an enforceable contract. *See Brown v. OneWest Bank, FSB*, 86 Mass. App. Ct. 1107, 13

N.E.3d 1027 (2014) (finding no contract to approve a proposed loan modification where, during negotiations, bank expressly reserved the right to determine at a later date whether the plaintiff-mortgagor qualified for the modification).

The Court further notes that, even if an enforceable contract was formed by the parties, Defendants would be excused from their obligation to approve the sale and discharge the mortgage because Plaintiffs breached the Short Sale Contract Addendum's material requirement that the buyer and seller of the Property be unrelated. *See* Pl.'s Am. Compl., Ex. 8, ¶ 3. "It is well established that a material breach by one party excuses the other party from further performance under the contract." *Ward v. American Mut. Liability Ins. Co.*, 15 Mass. App. Ct. 98, 101, 443 N.E.2d 1342 (1983). The motions to dismiss will be granted on Count I.

Because the amended complaint fails to plead the existence of an enforceable contract, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing also fails. *See O'Connor v. Merrimack Mut. Fire Ins. Co.*, 73 Mass. App. Ct. 205, 212, 897 N.E.2d 593 (2008) (citing *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E. 2d 957 (2004)). Therefore, the motions to dismiss will also be granted on Count V.

### Count II: Estoppel

Count II asserts that Bank of America should be "estopped" from claiming that "a writing containing a 'wet' signature is necessarily required" to create an enforceable contract, because Bank of America required Plaintiffs to negotiate the short sale exclusively through the online EQUATOR system. *See* Pl.'s Am. Compl., ¶ 37-39. This appears to be an argument that Defendants should be estopped from raising the statute of frauds as a defense. Although Defendants made such an argument in their previous motions to dismiss, they do not do so here. Thus, Count II appears to be moot. To the extent that Plaintiffs assert a claim for traditional

promissory estoppel, the amended complaint does not state a claim upon which relief can be granted. "Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court*, 448 Mass. 15, 27-28, 858 N.E.2d 699, 711 (2006).

Aside from conclusory allegations, the amended complaint includes insufficient factual support for a promissory estoppel claim. Even assuming Bank of America's extended negotiations with Plaintiffs included statements that the sale would eventually be approved—a fact not sufficiently pled—there are no facts in the amended complaint suggesting that Plaintiffs acted (or failed to act) in reliance on those statements. And even if the Court draws the negative inference from the amended complaint that Plaintiffs reasonably declined to seek an alternative housing remedy as a result of Bank of America's statements, there are still no facts suggesting that Plaintiffs suffered any detriment as a result of that reliance. Indeed, the Goulds continue to reside at the Property—the exact position they were in prior to any negotiations with Bank of America. *See Pappas Indus. Parks, Inc. v. Psarros*, 24 Mass. App. Ct. 596, 600, 511 N.E.2d 621 (Mass. App. Ct. 1987) (declining to apply the principle of estoppel where the plaintiff did not take material steps to his detriment before the defendant withdrew from the alleged agreement). Taking the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the amended complaint does not contain the requisite factual detail to establish a plausible claim for promissory estoppel. The motions to dismiss will be granted on Count II.

<em><u>Counts III and IV: Violations of M.G.L. c. 93A</u></em>

Counts III and IV assert claims for violations of the Massachusetts consumer protection statute, M.G.L. c. 93A. The claims present two bases for 93A relief.[5] First, the amended complaint alleges that it is an unfair or deceptive practice to require short sale agreements to be negotiated at arm's length between unrelated parties; further, Plaintiffs assert that Defendants' violated 93A by using the arm's length requirement to reject a sale to corporate buyer. Second, the amended complaint asserts a 93A claim for Defendants' act of transferring Plaintiffs' loan to a new servicing agent to avoid answering Plaintiffs' 93A demand letters.

The Massachusetts consumer protection statute proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2. A consumer alleging a 93A violation must establish (1) that the defendant has committed an unfair or deceptive act or practice; (2) injury; and (3) a causal connection between the injury suffered and the defendant's unfair or deceptive act. *Herman v. Admit One Ticket Agency LLC*, 454 Mass. 611, 615-16, 912 N.E.2d 450 (2009). A practice is unfair if it falls "within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." *Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1, 27, 679 N.E.2d 191 (1997) (internal alterations omitted). The familiar maxim is that the conduct "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 185 (1st Cir. 2009).

---

[5] Because the 93A claims rely on essentially the same set of facts and allegations, the Court examines Counts III and IV together.

To the extent that Counts III and IV assert a 93A violation based on Defendants' rejection of the short sale to SPI, the amended complaint fails to state a claim. Plaintiffs cite no authority for the proposition that the arm's length provision included in the Short Sale Purchase Contract Addendum falls within an established concept of unfairness, or is otherwise immoral, unethical, or oppressive. To the contrary, the arm's length principle is a legal concept ubiquitous in business transactions. S*ee Black's Law Dictionary* (10th ed. 2014) (defining "arm's-length" as "involving dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power; not involving a confidential relationship"). Furthermore, requiring short sale mortgagors to sell to unrelated buyers is a reasonable tool often used by lenders and servicers to protect themselves from mortgage fraud. *See* HUD Mortgagee Letter 2013-23, Docket No. 88, Ex. A (requiring all FHA-approved mortgagees to ensure that mortgagor-proposed short sales are an arm's length transactions between unrelated parties). Albert Gould concedes that SPI, Inc. was a corporate straw buyer formed for the *sole purpose* of avoiding the arm's length requirement. Thus, the fact that Bank of America rejected the sale to a corporate entity, as opposed to an individual family member, does not transform the arm's length requirement into an actionable act or practice under 93A.

The amended complaint also fails to state a claim with respect to Defendants' transfer of the loan servicing arrangement to avoid Plaintiffs' 93A demand letters. "A failure to respond to a demand letter does not in and of itself constitute a valid claim under Chapter 93A." *Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 506 (D. Mass. 2012). Even if the Court construes the loan transfer as an unfair practice used to stonewall consumers seeking relief from mortgage obligations—a practice that would justifiably infuriate any mortgagor—the amended complaint fails to plead that Plaintiffs suffered a distinct injury arising from that conduct. Any claim that

the loan transfer caused Plaintiffs to lose the opportunity to short sell the Property fails because, for the reasons stated above, Defendants did not enter into an enforceable agreement to approve the short sale. Plaintiffs do not allege, nor can the Court reasonably infer, that the loan transfer caused Plaintiffs to lose other opportunities to avoid foreclosure or restructure their debt. Without facts alleging a distinct harm arising from the loan transfer, the amended complaint fails to state a 93A claim. *See Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503, 984 N.E.2d 737 (2013) (observing that "an unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself"). Counts III and IV will be dismissed.

### *Count VI*

Count VI "calls upon the Defendants to establish that they are the current and legally valid present holders of the note and mortgage and possess the requisite legal authority to enforce any clause contained in either the note or the mortgage." Plaintiffs do not identify a statutory or common law cause of action for this requested relief. Furthermore, the amended complaint does not contain any allegation, let alone supporting facts, that BNY Mellon does not validly hold the promissory note and mortgage. Consequently, Count VI will be dismissed.

### **Conclusion**

For the reasons set forth above, the Defendants' motions to dismiss (Docket Nos. 46 & 48) are ***granted***. This case is dismissed.

SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**